# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|                          |   |                                          |
|--------------------------|---|------------------------------------------|
|                          | ) | Chapter 13                               |
| In re:                   | ) |                                          |
|                          | ) | Case No. 22-10032                        |
| Justin Randolph,         | ) |                                          |
|                          | ) | Honorable Judge Deborah L. Thorne        |
|              Debtor.     | ) |                                          |

-------------------------------------------------------

## NOTICE OF MOTION

TO: See attached list

PLEASE TAKE NOTICE that on April 12, 2023, at 9:30 a.m., I will appear before the Honorable Deborah L. Thorne, or any judge sitting in her place, either in Courtroom 682 of the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn St., Chicago, IL, or electronically as described below and present the motion of Creditor Pravati SPV II, LLC's *Motion to Convert Debtor's Bankruptcy Case to a Case Under Chapter 7*, a copy of which is attached.

**All parties in interest, including the movant, may appear for the present of the motion either in person or electronically using Zoom for Government.**

**To appear by video**, use this link: https://www.zoomgov.com. Then enter the meeting ID.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID.

**Meeting ID and password**. The meeting ID for this hearing is 160 9362 1728 – no password required. The meeting ID and further information can also be found on Judge Thorne's web page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

Dated: March 31, 2023

Respectfully submitted,

**ARENTFOX SCHIFF LLP**

By: */s/ Annie Y. Stoops*
  Aram Ordubegian (*pro hac vice admitted*)
  Annie Y. Stoops (*pro hac vice admitted*)
  ArentFox Schiff LLP
  555 West Fifth Street, 48th Floor
  Los Angeles, CA 90013
  Telephone: (213) 629-7400
  Facsimile: (213) 629-7401
  Email: aram.ordubegian@afslaw.com
  annie.stoops@afslaw.com

  J. Mark Fisher (ARDC No. 3121711)
  ArentFox Schiff LLP
  233 South Wacker Drive, Suite 7100
  Chicago, IL 60606 USA
  Telephone: (312) 258-5500
  Facsimile: (312) 258-5600
  Email: mark.fisher@afslaw.com

  Attorneys for Plaintiff Pravati SPV II, LLC

AFDOCS:26727620.8

# CERTIFICATE OF SERVICE

I, Annie Y. Stoops, certify that I served a copy of this notice and the attached motion on each entity shown on the attached list at the address shown and by the method indicated on the list on March 31, 2023.

**Via ECF:**

Richard B Aronow on behalf of Creditor Wintrust Mortgage, a division of Barrington Bank & Trust Company, N.A.
LOGSECF@logs.com, raronow@logs.com

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Marilyn O Marshall
courtdocs@chi13.com

Aram Ordubegian on behalf of Creditor Pravati SPV II, LLC
aram.ordubegian@afslaw.com

Annie Yang Stoops on behalf of Creditor Pravati Credit Fund III, LP
annie.stoops@arentfox.com

Justin R. Storer on behalf of Debtor Justin Randolph and Stephanie Sylverne
jstorer@wfactorlaw.com, bharlow@wfactorlaw.com

**Via United States Mail:**

Wintrust Mortgage, a division of Barrington
P.O. Box 619096
Dallas, TX 75261-9096

AES/ED Services
1200 N. 7th St.
Harrisburg, PA 17102-1419

American Express
PO Box 981537
El Paso, TX 79998-1537

Arbitrage Capital Ventures, LLC
4400 N. Scottsdale Rd., #9277
Scottsdale, AZ 85251-3331

Best Buy/CBNA
5800 S. Corporate Place
Sioux Falls, SD 57108-5027

Certified Services
1300 N. Skokie Highway
Suite 103A
Gurnee, IL 60031-2144

Educational Credit Management Corporation
P.O. Box 16408
St. Paul, MN 551160408

Ian Abaie
1620 E. Crocus Dr.
Phoenix, AZ 85022-4573

AFDOCS:26727620.8

JPMorgan Chase Bank N A
Bankruptcy Mail Intake Team
700 Kansas Lane Floor 01
Monroe, LA 71203-4774

Educational Credit Management Corporation
PO BOX 16408
Saint Paul, MN 55116-0408

Aidvantage on behalf of
Department of Education Loan Services
PO BOX 9635
Wilkes-Barre, PA 18773-9635

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355-0701

Barclays Bank Delaware
PO Box 8806
Wilmington, DE 19899

Binkley Properties, LLC
2200 E. Camelback Rd., Suite 216
Phoenix, AZ 85016-3456

Citibank, N.A.
5800 S Corporate Pl
Sioux Falls, SD  57108-5027

Frame
Zeller
200 W. Monroe St., Suite 2025
Chicago, IL 60606-5035

Illinois Department of Revenue
Bankruptcy Unit
PO Box 19035
Springfield IL 62794-9035

PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541-1021

JPMorgan Chase Bank, N.A.
s/b/m/t Chase Bank USA, N.A.
c/o Robertson, Anschutz, Schneid,
Crane & Partners, PLLC
6409 Congress Avenue, Suite 100
Boca Raton, FL 33487-2853

AES as agent for National Student Loan
Progr
PO Box 82507
Lincoln, NE 68501-2507

Alexander Chucri
4400 N. Scottsdale Rd., #9277
Scottsdale, AZ 85251-3331

AMERICAN HONDA FINANCE
P O BOX 168088
IRVING TX 75016-8088

Barrington Bank and Trust Co., N.A.
201 S. Hough St. Company
Barrington, IL 60010-4364

Capital One
PO Box 31293
Salt Lake City, UT 84131-0293

Dept of Education/Aidvantage
1891 Metro Center Dr.
Reston, VA 20190-5287

Hoyt Neal
419 W. Glen Eagles Dr.
Phoenix, AZ 85023-5256

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Kohl's/Capital One
PO Box 3115
Milwaukee, WI 53201-3115

- 4 -

LVNV Funding, LLC
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

Navient
PO Box 9655
Wilkes Barre, PA 18773-9655

SYNCB/Old Navy
4125 Windward Plaza
Alpharetta, GA 30005-8738

Synchrony Bank
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk VA 23541-1021

Law Office of Justin G. Randolph
53 W. Jackson Blvd., Ste. 1234
Chicago, IL 60604-3612

Navient Solutions, LLC. on behalf of
ECMC
PO BOX 16408
St Paul, MN 55116-0408

Rob Binkley
8757 E. Avalon
Scottsdale, AZ 85251-4968

Dated: March 31, 2023

Small Business Administration
409 3rd St, SW.
Washington, DC 20416-0005

U.S. Small Business Administration
Attn Bk Notices
332 S Michigan Ave Suite 600
Chicago IL 60604-4318

Marilyn O Marshall
224 South Michigan Ste 800
Chicago, IL 60604-2503

Mohela
Claims Department
633 Spirit Drive
Chesterfield MO 63005-1243

SYNCB/Amazon
PO BOX 965015
Orlando, FL 32896-5015

Stephanie Sylverne
630 Brewster Lane
Schaumburg, IL 60193-2562

Justin Randolph
630 Brewster Lane
Schaumburg, IL 60193-2562

By: */s/ Annie Y. Stoops*

Annie Y. Stoops (*pro hac vice admitted*)
ArentFox Schiff LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
Telephone: (213) 629-7400
Facsimile: (213) 629-7401
Email: annie.stoops@afslaw.com

AFDOCS:26727620.8

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|                          |     |                                         |
|--------------------------|-----|-----------------------------------------|
|                          | )   | Chapter 13                              |
| In re:                   | )   |                                         |
|                          | )   | Case No. 22-bk-10032                    |
| Justin Randolph,         | )   |                                         |
|                          | )   | Honorable Judge Deborah L. Thorne       |
| Debtor.                  | )   |                                         |

------------------------------------------------------------

**MOTION TO CONVERT DEBTOR'S BANKRUPTCY CASE
TO A CASE UNDER CHAPTER 7**

Pravati SPV II, LLC ("Pravati"), a secured and unsecured creditor who holds, *inter alia*,

three judgments against Debtor Justin G. Randolph ("Debtor" or "Randolph"), by its attorneys,

Aram Ordubegian and Annie Y. Stoops of the law firm of ArentFox Schiff LLP, hereby moves the

Court (the "Motion") to convert Debtor's Chapter 13 bankruptcy case to a case under Chapter 7,

and represents as follows:

## I.     INTRODUCTORY STATEMENT

1.      Although this bankruptcy case was filed in September 2022, it is merely the latest

step in a multi-year scheme beginning in 2017 by Randolph to fraudulently induce Pravati to fund

him and then to avoid ever repaying Pravati while also keeping the underlying revenues which

secured the funding, resulting in a windfall double recovery for Randolph at Pravati's expense.

2.      Pravati is the holder of three hard-fought judgments against Debtor, for which the

damages and obligations total more than $440,115.67. *See* Proofs of Claim 8-1, 9-1, and 10-1; *see

also* Proof of Claim 11-1 for related legal fees. Pravati's largest judgment, provided for in Claim

8-1, resulted from the confirmation of an arbitration award, the *Second Amended Final Award of

Arbitrator* dated June 7, 2021 ("Second Amended Final Award"), entered against Randolph and

AFDOCS:26727620.8

his spouse, Stephanie Sylverne ("Sylverne"), for breach of contract and tortious conversion of collateral. *See* Proof of Claim 8-1.

3.      The Second Amended Final Award finds that Randolph's sole proprietorship law firm, Law Office of Justin G. Randolph ("Sole Proprietorship"), received law firm funding from Pravati in 2017. In exchange, Randolph granted Pravati a continuing security interest in his accounts receivables and payment intangibles. However, despite admitting on various occasions that Debtor collected on case collateral—which is likely at least several hundred thousand dollars—subject to Pravati's security agreement and despite promising on various occasions that he would be remitting payment, Debtor converted Pravati's security interest by keeping for himself the encumbered proceeds in full.

4.      Moreover, Debtor targeted Pravati in a bad faith pressure campaign, by misusing the legal system in an attempt to extract concessions from and avoid paying established damages to Pravati. For instance, in the days leading up to the May 2021 evidentiary hearing in the arbitration, Debtor filed two nearly identical frivolous lawsuits against Pravati, its principals, its employees, and its investors personally.[1] These lawsuits generated negative publicity, disrupted Pravati's business functions, caused strain in Pravati's employee and investor relations, and generally damaged Pravati's reputation. Although Pravati was ultimately awarded judgment in both cases, these judgments covered only a fraction of the fees incurred in defending the Bad Faith Actions. *See* Proofs of Claim 9-1 and 10-1.

5.      On September 1, 2022, Debtor and Sylverne brought this Court into their scheme

---

[1] One such frivolous lawsuit was filed in the United States District Court for the District of Arizona as Case No. 2:21-cv-00713-SRB (the "District Court Action"). The other frivolous suit was filed in the Arizona Superior Court as Case No. CV2021-006612 (the "State Court Action," and with the District Court Action, the "Bad Faith Actions").

AFDOCS:26727620.8

by jointly filing with this Court a Petition seeking relief under Chapter 13 of the Bankruptcy Code.

6.      Debtor's Chapter 13 Petition was filed in bad faith for the sole objective to avoid having to pay Pravati what are now established damages reduced to judgment and involves nothing more than a two-party dispute between Debtor and Pravati. Debtor has wrongfully and knowingly retained the funds advanced by Pravati as well as recoveries against which the advance was made—a windfall double recovery for Debtor.  Debtor is not an individual with regular income; rather, Debtor is a business owner who controls his own salary. Both before and during this bankruptcy case, Debtor has failed to be transparent regarding his finances, business operations, income, and the value of other assets including his business holdings.  Although Pravati filed a 2004 Motion, granted by this Court [Dkt. No. 51], Debtor and his law firms have not responded to the now-overdue requests and have waived all objections to production.

7.      Conversion to Chapter 7, where a trustee can oversee the orderly recovery and administration of Debtor's assets, is in the best interests of creditors, of which Pravati is by far the largest.

8.      Pravati already has a judgment finding that Debtor tortiously converted Pravati's security interest. This finding is binding upon Debtor, meaning Pravati's debt is generally non-dischargeable in Chapter 7.  As will be detailed herein and based only upon the limited information available in the public record—Pravati having not had the benefit of meaningful discovery due to Debtor's bad-faith refusal to provide the required information—Debtor likely converted hundreds of thousands of dollars in additional case collateral subject to Pravati's lien.

9.      Further, purportedly because Debtor is in Chapter 13, the estate will not recover any fraudulent transfers between insiders such as Debtor, Sylverne, Philip Holloway, or any one of their various alter ego entities.   Here, the recovery for avoidance claims is of substantial value

- 8 -

to the estate, and creditors, like Pravati, will necessarily do better in Chapter 7, wherein a Chapter 7 trustee will be appointed to investigate and prosecute any fraudulent transfer claims. Pravati is also willing to take on the task of pursuing fraudulent transfer claims on behalf of the Chapter 7 estate. It is in the best interests of creditors for this case to be converted to Chapter 7 so fraudulent transfer claims can be prosecuted for the benefit of creditors, amongst others.

10.    In addition, as has been Debtor's express goal, Debtor has unreasonably delayed and prejudiced Pravati's recovery efforts, both in this bankruptcy case and for years before it. Debtor's delay tactics leading up to this bankruptcy case allowed Debtor time to wrongfully and knowingly dispose of hundreds of thousands of dollars in case collateral against which Pravati was secured. Consequently, Debtor does not deserve to benefit from the provisions in Chapter 13, and this case should be converted to Chapter 7.

## II.    JURISDICTION AND VENUE

11.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334(b). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases supporting the relief sought by this Motion are 11 U.S.C. §§ 105, and 1307.

## III.    FACTUAL BACKGROUND

### A.    The Initial Funding

12.    Debtor is an attorney practicing law in the state of Illinois.

13.    In 2017, Randolph, through his sole proprietorship, Law Office of Justin G. Randolph ("Sole Proprietorship"), applied to Pravati and ultimately received net funding of $183,960, pursuant to the Law Firm Legal Funding Contract & Security Agreement dated December 21, 2017 (the "Agreement"). The funding was non-recourse in the sense that, so long as Debtor remained in compliance with the terms of the Agreement, a payment obligation would

AFDOCS:26727620.8

only arise if, when, and to the extent Debtor obtained Proceeds.  True and correct copies of the

Agreement and Second Amended Final Award of the Arbitrator are attached to the Declaration of

Ian Abaie (the "Abaie Declaration") as **Exhibits 1** and **2**.

14.    Among other things, the Agreement provided the following in Section 5: "[Debtor]

understands, acknowledges and agrees that [Debtor] shall not assign, dispose of, encumber, or

pledge as security or otherwise all or any portion of the Proceeds or Collateral, or any other interest

in any Case . . . unless and until Pravati is first unconditionally and finally paid in full… ."

15.    In exchange for the capital infusion, the Agreement gave Pravati a first-position

lien against and right to payment from accounts receivables and payment intangibles, including

those then-existing as well as those arising in the future ("Proceeds").  Award (defined below) at

Finding of Fact ("FOF") ¶¶ 3, 6.  A true and correct copy of the Final Award of Arbitrator is

attached to the Abaie Declaration as **Exhibit 3**.

16.    Although Randolph was at the time operating his business as a Sole Proprietorship,

Randolph apparently believed that Pravati could never enforce the Agreement against his personal

assets.   True and correct copies of email exchanges produced by Debtor's funding broker,

Advanced Legal Capital LLC, between said broker and Debtor from October 2017, as well as

emails between Pravati and Debtor from May 2019 are attached to the Abaie Declaration as

**Exhibits 4** and **5**.  After entering into the Agreement, Randolph collected hundreds of thousands

of dollars in Proceeds subject to Pravati's lien but wrongfully disposed of those monies without

remitting payment to Pravati.

**B.    The Creation of Randolph & Holloway LLC**

17.    On April 2, 2019, following months of Debtor purporting confusion about how to

actually make a payment, Pravati issued written notice of default to Randolph.  True and correct

AFDOCS:26727620.8

copies of email chains between the Debtor and Pravati in in June-July 2018 and August 2018 in which the Debtor feigned confusion about making payment are attached to the Declaration of Ivan Mora ("Mora Declaration") as **Exhibits 1** and **2**, and the Notice of Default and Demand is attached to the Abaie Declaration as **Exhibit 6**.

18.     On the same day, April 2, 2019, Randolph and an attorney who worked on behalf of Randolph's Sole Proprietorship, Philip Holloway ("Holloway"), formed a new law firm, Randolph & Holloway LLC ("Randolph & Holloway"), and, without filing notices of substitutions of counsel or change of firm, simply began appearing in the Sole Proprietorship's existing cases on behalf of Randolph & Holloway.  A true and correct copy of an appellate brief filed in the *Frey* case is attached to the Request for Judicial Notice (the "RFJN") as **Exhibit A**.  A true and correct copy of a saved PDF of Randolph & Holloway's LLC File Detail Report with the Illinois Secretary of State website are attached to the Abaie Declaration as **Exhibit 7**

19.     Despite Pravati's still outstanding 2004 Requests, Debtor has not produced documentation establishing that his clients gave informed consent to the transfer of their cases to a different law firm.  In cases that Debtor or Holloway were handling through Law Office of Justin G. Randolph, they simply started appearing on behalf of Randolph & Holloway, without filing notices of substitution of counsel.  True and correct copies of the docket in the *Castaneda* case and the motion to alter or amend the judgment and/or for a new trial are attached to the RFJN as **Exhibits B** and **C.**

20.     For example, Debtor's interest in the *Lester* Case was expressly pledged as collateral to Pravati in 2017 pursuant to the Agreement.  Agreement, Schedule B.  Public records obtained by Pravati reveal that, on March 6, 2017, Randolph appeared, through Law Office of Justin G. Randolph, on behalf of Mr. Lester.  Shortly thereafter, Philip Holloway, also acting

- 11 -

through Law Office of Justin G. Randolph, entered an appearance for Mr. Lester.  True and correct copies of Debtor's and Holloway's Notices of Appearance in the *Lester* case are attached to the Request for Judicial Notice (the "RFJN") as **Exhibits D** and **E**.

21.     On November 14, 2018, Randolph, acting through Law Office of Justin G. Randolph, filed a fee application seeking attorneys' fees of $269,950.50. Attached to the fee application were $269,959.50 in supporting invoices issued by Law Office of Justin G. Randolph, including invoices dating as far back as 2013, which invoices included charges for work performed by both Holloway and Randolph on behalf of the Sole Proprietorship.  A true and correct copy of the *Lester* Fee Application is attached to the RFJN as **Exhibit F**.

22.     On May 10, 2019, without filing a notice of substitution of counsel or a new notice of appearance, both Randolph and Holloway, on behalf of Randolph & Holloway, filed in the *Lester* Case a status report stating that the plaintiff and defendant had "reached an agreement" regarding the attorneys' fees.  On February 13, 2020, both Randolph and Holloway, now acting through Randolph & Holloway, signed and filed a Status Report in the *Lester* Case.  True and correct copies of the *Lester* docket, and the May 10, 2019 and February 13, 2020 Status Reports are attached to the RFJN as **Exhibits G, H, and I**.

23.     On October 30, 2020, Holloway and Randolph, acting through Randolph & Holloway, filed an updated status report seeking another $73,650 in attorneys' fees.  October 30, 2020 Status Report, p. 23, 27.  Attached to that updated fee application, Holloway and Randolph provided supporting invoices, which look identical to the prior invoices issued by the Sole Proprietorship except that they say "Randolph & Holloway, LLC" on the first page.  *Id*., p.49. Holloway and Randolph represented to the federal court that these additional fees were incurred in the *Lester* Case <u>after</u> June 25, 2019 (i.e., after Debtor transferred the Sole Proprietorship's assets

- 12 -

to Randolph & Holloway). *Ibid*. A true and correct copy of the October 30, 2020 Status Report is attached to the RFJN as **Exhibit J**.

24.     Other examples abound of Debtor's failure to maintain meaningful distinction between the Sole Proprietorship and Randolph & Holloway. Following the formation of Randolph & Holloway, Debtor would direct recipients of email from his sole proprietorship to contact Randolph & Holloway by stating in his email signature for justin@jrandolphlaw.com following: "**New email address: justin@randolph-holloway.com**" Debtor's emails do not say that he had created a new business and that his clients have an option to select whether to retain the new business or to find counsel elsewhere, nor did Randolph explain whether his clients could simply continue the representation with the Sole Proprietorship.   Debtor has never provided Pravati with any indication that his clients gave informed consent or otherwise entered into new representation agreements with Randolph & Holloway.  Copies of emails from Debtor following the formation of Randolph & Holloway are attached to the Abaie Declaration as **Exhibits 8**, **9**, and **10**.

25.     Prior to the April 2019 formation of Randolph & Holloway, the Sole Proprietorship used the same office address that Randolph & Holloway and Law Office of Justin G. Randolph, Inc. use: 53 West Jackson Boulevard, Suite 1234, Chicago, Illinois 60604.  A true and correct copy of the Notice of Appearance from the Sole Proprietorship is attached to the RFJN as **Exhibit K**, and true and correct copies of saved PDFs of Randolph & Holloway's Contact Section of its website and Law Office of Justin G. Randolph Inc.'s Corporation File Detail Report with the Illinois Secretary of State website are attached to the Abaie Declaration as **Exhibits 11** and **12**.

26.     Prior to the April 2019 formation of Randolph & Holloway, the Sole Proprietorship used the same phone number as Randolph & Holloway: (312) 663-1560.  *See* Notice of Appearance from the Sole Proprietorship and PDF of Randolph & Holloway's Contact Section of

its website.

27.    Following its formation, Randolph & Holloway's website stated as follows: "Randolph & Holloway opened in 2004 as the Law Office of Justin G. Randolph."  However, Randolph & Holloway was not formed until April 2019.  *See* Randolph & Holloway's LLC File Detail Report with the Illinois Secretary of State website.  A true and correct copy of a PDF of Randolph & Holloway's About Section of its website is attached to the Abaie Declaration as **Exhibits 13**.

28.    Prior to April 2019, the Law Office of Justin G. Randolph had a website, www.jrandolphlaw.com.[2]  At that time, it was very similar in visual structure as compared to the visual structure of Randolph & Holloway's post-April 2019 website until very recently and featured the same clickable categories of: "Home," "Immigration," "Employment Discrimination," "About," and "Contact."  The "About" page of that website included a statement that "[t]he Law Office of Justin G. Randolph opened in 2004."  True and correct copies of PDFs of the Sole Proprietorship's website and Randolph & Holloway's website are attached to the Abaie Declaration as **Exhibits 14** and **15**.

29.    Following the formation of Randolph & Holloway, Randolph switched back and forth between email addresses affiliated with the Sole Proprietorship and those affiliated with Randolph & Holloway, and sometimes utilizes signature lines belonging to Randolph & Holloway on emails sent by Debtor via the Sole Proprietorship.  True and correct copy of email chains in which Debtor switched between email signatures are attached to the Abaie Declaration as **Exhibits 16**, **17**, and **18.**

---

[2] The website went offline for years following the creation of Randolph & Holloway but appears to be currently active with a different layout.

- 14 -

**C.**    **Debtor Did Not Disclose—and Withheld—Funds that Were Pledged to Pravati as Collateral.**

30.    Given Debtor's refusal to provide transparency or cooperate in discovery, as noted by the Arbitrator, before and during this case, Pravati has had to resort to public records searches for information as to Debtor's financial receipts.  True and correct copies of Pravati's Post-Hearing Arbitration Brief and the Arbitrator's Prehearing Order No. 4 are attached to the Abaie Declaration as **Exhibits 19** and **20.**

31.    Although the public records cannot show the full extent of Debtor's financial and professional activities, Pravati has nonetheless identified several instances where Debtor has tortiously dissipated collateral subject to Pravati's security interest.  For instance, Pravati obtained records in the case of *Lester v. O'Rourke*, United States District Court, Northern District of Illinois, Case No. 1:17-cv-01772 (the "*Lester* Case"), which case was expressly listed as part of Pravati's Collateral in the Agreement. Those records reveal that Debtor's client, Mr. Lester, received a fee award of $280,339.  A true and correct copy of the *Lester* Fee Award is attached to Pravati's concurrently filed RFJN as **Exhibit L**.

32.    Debtor has denied to Pravati that he has "received anything on Lester" while simultaneously refusing to explain what came of the funds.  Pravati contends that the *Lester* Defendant, the United States of America, has in fact paid out on the *Lester* judgment, yet those funds are glaringly missing from Debtor's schedules.[3]  A true and correct copy of Debtor's emails with Pravati regarding the "Bond issue" is attached to the Abaie Declaration as **Exhibit 21**.

33.    Public records demonstrate that Randolph & Holloway has resolved more than two

---

[3] Pravati has, *inter alia*, requested information about the United States' remittance of the *Lester* funds through the 2004 Motion, which this Court approved [Dkt. Nos. 50 and 51]. However, nearly a month after the deadline to produce documents, neither Debtor nor any of his alter ego entities have provided any of the requested documentation to Pravati.

AFDOCS:26727620.8

dozen different federal cases since June of 2019, including:

      a.     *Scott v. Shulkin*, U.S. District Court, N.D. Ill. Case No. 1:18-CV-00011, for at least $60,000. True and correct copies of the judgment and Joint Status report in *Scott v. Shulkin* are attached to the RFJN as **Exhibits M** and **N.**

      b.     *Ferguson*, *Butler*, and *Potter* cases, U.S. District Court, N.D. Ill. Case No. 19-C-2554, 19-C-2728, and 19-C-3200, resolved for $104,650, $150,150, and $200,200, respectively. A true and correct copy of the executed Stipulation for Compromise Settlement and Release is attached to the RFJN as **Exhibit O**.

      c.     The *Frey* case, U.S. District Court, N.D. Ill. Case No. 1:12-cv-06284, resolved for $45,000. A true and correct copy of the executed Minute Entry is attached to the RFJN as **Exhibit P**.

      34.     Per the Agreement, all cases that began as cases of the Sole Proprietorship were pledged to Pravati as collateral by Debtor.[4] Debtor's subsequent resolution of the cases through an alter ego entity does not nullify Pravati's existing lien, especially where, as here, the alter ego has knowledge that Pravati was asserting a lien.

**D.**     **Debtor's Scorched Earth Tactics.**

      35.     Pursuant to the dispute resolution clause in the Agreement, Pravati on May 8, 2019 commenced arbitration against Debtor before the American Arbitration Association ("AAA") in

---

[4] The Agreement provides, at Section 5, that "[Debtor] hereby also grants to Pravati a security interest (which shall have a first lien priority) in all Collateral (including all Accounts and Payment Intangibles), whether now or hereafter existing…" (Agreement § 5). It states "[Debtor] will provide all cases as collateral constituting all fees, distributions, payments, proceeds, preferences and other benefits which [Debtor] now is or may hereafter become entitled to receive." (Agreement, Schedule A, p.2). Additionally, the Agreement mandated that Debtor "shall not, and shall not permit any Person to, commingle Case Proceeds and/or other funds to which Pravati is entitled with any other funds." (Agreement, § 6).

Case No. 01-19-0001-4311 (the "Arbitration"). Throughout the Arbitration, Debtor scorched the Earth in an attempt to avoid repaying Pravati. Debtor conducted an extensive investigation into Pravati's other lawsuits to coordinate with other defendants; Debtor even went so far as to represent one of the other Defendants against Pravati. A true and correct copy of the Debtor's Second Amended Complaint in the District Court Action is attached to the RFJN as **Exhibit Q**.

36.    Debtor demanded to depose Pravati Capital, LLC's Chief Executive Officer despite knowing that he had little to add to the issues under consideration, simply to harass him and waste his time. A true and correct copy of Debtor's email to Pravati regarding hearing witnesses is attached to the Abaie Declaration as **Exhibit 22**. Debtor defied the Arbitrator's direct orders by refusing to provide discovery. *See* **Exhibit 19** of the Abaie Declaration at p. 38; **Exhibit 20** of the Abaie Declaration at p. 2. Debtor sought—but was denied—Rule 11 sanctions against Pravati and its counsel at the time. Debtor filed two motions to dismiss and otherwise protracted what was supposed to be an expedited arbitration proceeding. *See* **Exhibit 20** of the Abaie Declaration at p. 2 and the Arbitrator's Prehearing Order No. 1, a true and correct copy of which is attached to the Abaie Declaration as **Exhibit 23**.

37.    On October 22, 2019, the Arbitrator issued the reasoned *Final Award of Arbitrator* ("Award") awarding damages to Pravati in the amount of $183,960, plus interest. *See* Award. Debtor challenged confirmation of the Award in the Arizona Superior Court, Maricopa County ("Arizona Superior Court"), in Case No. CV2019-014865 (the "Confirmation Case").

38.    Meanwhile, despite that the first evidentiary hearing had already occurred and that the Arbitrator had already issued the initial Award finding Debtor personally liable because he had failed to incorporate his firm by the time he entered into the Agreement, Debtor on June 16, 2020

incorporated Law Office of Justin G. Randolph, Inc. in the State of Illinois.[5] *See* **Exhibit 12** of the Abaie Declaration.

39.     On October 8, 2020, the Arizona Superior Court remanded Pravati's tort claims to Arbitration.

40.     On April 22 and 23, 2021—just days before the second evidentiary hearing in the Arbitration—Randolph filed the two Bad Faith Actions. Debtor sued Pravati on behalf of Law Office of Justin G. Randolph, Inc., but the Arbitrator found that "Mr. Randolph conceded at the time the contract was executed, his law practice was a sole proprietorship. Accordingly, his signature was as 'Owner' and not as a corporate officer. Nor was he in the process of incorporating…Therefore, the designation of the recipient of Claimant's funding as a corporation is of no consequence and Mr. Randolph entered into the transaction in his personal capacity." *See* the Arbitrator's Prehearing Order No. 1.

41.     In the Bad Faith Actions, Debtor made baseless and inflammatory allegations against Pravati, such as participation in organized crime and/or a civil fraud conspiracy ring. Before the District Court Action was dismissed, Debtor, who had learned that Pravati was in a dispute with another bad-actor client, undertook the representation of that bad-actor client in litigation against Pravati, and added that client as a plaintiff to the District Court Action in a futile attempt to save his claims from impending dismissal. True and correct copies of the Complaints in the Bad Faith Actions are attached to the RFJN as **Exhibits R** and **S**; *see also* Second Amended Complaint in the District Court Action.

42.     Notwithstanding Debtor's bad-faith pressure campaign, following another evidentiary hearing, on June 7, 2021, the Arbitrator issued the Second Amended Final Award,

---

[5] Subsequently, Debtor allowed the new firm's status to lapse, although it appears to be active again.

finding, *inter alia,* that: (1) Debtor was liable to Pravati for damages of $183,960, plus interest; (2) Pravati had a valid security interest in Debtor's accounts receivables and general intangibles; and (3) Debtor tortiously converted at least $119,500 in collateral subject to Pravati's security interest.

43.     Specifically, the Arbitrator found that the Agreement was "valid and binding" and conveyed to Pravati "a security interest in [Debtor's] accounts receivable and general intangibles, both existing and future."  Second Amended Final Award, FOF ¶ 6, Conclusions of Law ("CL") ¶ 4. Thus, "Randolph was obligated to pay [Pravati] each time he was compensated on a client matter, whether he was handling the matter on an hourly fee or contingency fee basis."  *Id.* at FOF ¶ 8.  Further, "[p]ursuant to the Agreement, Randolph was prohibited from transferring his interest or right to full payment in any 'Case' to anyone."  *Id.* at FOF ¶ 10.  The Arbitrator then went on to decide that Debtor had "received numerous payments on client matters after the effective date of the Agreement," including $100,000 on March 4, 2019 but "knowingly failed to" remit payment to Pravati.  *Id.* at FOF ¶ 9.

44.     In addition, the Arbitrator found that, "Randolph ceased operating the Law Office of Justin G. Randolph [a sole proprietorship] as of April 2, 2019, when he and Philip Holloway formed Randolph & Holloway, LLC."  *Id.* at FOF ¶ 11.  Further, the Arbitrator found in the Award that "Randolph transferred his interest in client matters existing at the time of the formation of Randolph & Holloway to that firm."  *Id.* at FOF ¶ 12.

**E.     Judgments.**

45.     The Arizona Superior Court confirmed the Second Amended Final Award on December 13, 2021, and on May 2, 2022, entered judgment in favor of Pravati for $350,424.80 plus continuing interest (the "Conversion Judgment").  A true and correct copy of the Conversion Judgment is attached to the RFJN as **Exhibit T**.

- 19 -

46.     Pravati prevailed in the District Court Action, ultimately receiving a judgment for payment of legal fees incurred in the amount of $32,128.00 and costs of $96.00 (the "District Court Judgment").  A true and correct copy of the District Court Judgment is attached to the RFJN as **Exhibit U**.

47.     Pravati also prevailed in the State Court Action, obtaining a judgment for payment of legal fees incurred in the amount of $19,723.01 and costs of $378.08 (the "State Court Judgment"). A true and correct copy of the State Court Judgment is attached to the RFJN as **Exhibit V**.

48.     By July 7, 2022, the District Court Judgment had been both registered in Illinois and recorded against Debtor.  A true and correct copy of the recorded District Court Judgment is attached to the RFJN as **Exhibit W**.

49.     By August 18, 2022, the Conversion Judgment had been registered in Illinois and recorded against Debtor.  A true and correct copy of the recorded Conversion Judgment is attached to the RFJN as **Exhibit X**.

**F.      Debtor Used the Appellate Process to Impose Years of Additional Delay upon Pravati.**

50.     In the years of litigation between the Parties, Debtor had been threatening to use the appellate process in order to delay Pravati from collecting on its judgments while simultaneously avoiding, or at the very least forestalling, his bankruptcy filing.

51.     On January 3, 2022, before the Arizona Superior Court had even entered judgment, Debtor filed a premature Notice of Appeal.  This caused the Superior Court to delay entry of judgment for months, until on April 6, 2022, the Arizona Court of Appeals ruled on Debtor's appeal.  True and correct copies of Debtor's notice of appeal and the Arizona Court of Appeals' Order Dismissing Appeal are attached to the RFJN as **Exhibits Y** and **Z**.

52.     Following its receipt of the Arizona Court of Appeals' transmittal letter, the Arizona Superior Court once again asserted jurisdiction, denied as meritless Debtor's Rule 11 motion against Pravati and its counsel, and on May 2, 2022 entered the Conversion Judgment against Debtor. A true and correct copy of the Arizona Superior Court's Ruling denying the Rule 11 motion is attached to the RFJN as **Exhibit AA**. *See also* **Exhibit T** of the RFJN.

53.     On May 3, 2022, Debtor filed a second Notice of Appeal in the Confirmation Case.

**G.     Events Immediately Precipitating Debtor's Bankruptcy**

54.     On May 6, 2022, Debtor filed with the Arizona Superior Court a *Motion for Supersedeas Bond* ("Bond Motion") seeking to stay all enforcement and execution of the Conversion Judgment until the Arizona Court of Appeals concludes its review of the protracted arbitration and confirmation proceedings and set the bond at zero.  Bond Motion, p. 2.  A true and correct copy of the Bond Motion is attached to the RFJN as **Exhibit BB**.

*55.*     During meet and confer efforts, Debtor refused to provide additional information to Pravati about his financial situation, including what he did with the hundreds of thousands of dollars in Proceeds that came in on the Case Collateral.  *See* **Exhibit 21** of the Abaie Declaration.

56.     In Debtor's initial affidavit attached to his Bond Motion (the "Initial Affidavit"), he cryptically stated that "I make $10,000 a month before taxes but have no significant stock or assets."   Bond Motion, p.4 ¶ 13. Debtor did not explain how he determined whether a stock holding, or asset was "significant" for purpose of the misleading affidavit filed with the Arizona Superior Court. *Ibid*. Debtor's initial affidavit made no mention of his holdings in Randolph & Holloway, LLC; Law Office of Justin G. Randolph, Inc.; or "Justin Randolph Law," as listed on Debtor's Corrected Schedule A/B. [Bankr. Dkt. No. 12, p.14]. Nor did Debtor disclose that, because he owns 50% of Randolph & Holloway, LLC, he could seemingly control his purported

- 21 -

$10,000 a month salary.

57.     The Initial Affidavit did not disclose to the Arizona Superior Court that he owns five vehicles, at least four of which are fully paid off.  Bond Motion, p.3-4; *compare* Bankr. Dkt. No. 12, p.11.

58.     The Initial Affidavit did not disclose any cash or other liquid account holdings. Bond Motion, p.3-4.  However, Pravati was aware that one of the cases that Debtor had expressly pledged as security for the Agreement, *Lester v. O'Rourke*,[6] had recently generated fee revenues of at least $280,339 (the "*Lester* Proceeds").

59.     The Arizona Superior Court determined that Debtor had failed to meet his burden of establishing his net worth by a preponderance of an evidence. Ruling on Bond Motion, p.2-3. In setting the bond at the total amount of the judgment ($350,424.80), the Arizona Superior Court found that Debtor did not provide credible evidence of his net worth and that "Randolph declined to propose other options and continued to argue that a $0.00 bond was appropriate." *Id*. at p.3.  A true and correct copy of the Ruling on Bond Motion is attached to the RFJN as **Exhibit CC**.

60.     Also on August 8, 2022, Debtor filed with the Arizona Superior Court a *Motion for Reconsideration of Bond Amount* ("Motion for Reconsideration") wherein he further revealed that he had cash holdings of $17,497.63.  Motion for Reconsideration, p.9. Additionally, Debtor disclosed for the first time that his interest in Randolph & Holloway was valued at $189,639. *Ibid*. Debtor also valued his interest in "Law Office of Justin G. Randolph" at $2,934.07.  *Ibid*. Finally, Debtor disclosed a "[f]ixed asset" category of "Home and Vehicles," which he valued at a combined $211,000.  *Ibid*.   A true and correct copy of the Motion for Reconsideration is attached to the RFJN as **Exhibit DD**.

---

[6] United States District Court, Northern District of Illinois, Case No. 1:17-cv-01772.

AFDOCS:26727620.8

61.     On August 22, 2022, the Arizona Superior Court denied Debtor's Motion for Reconsideration.  A true and correct copy of the Ruling Denying the Motion for Reconsideration is attached to the RFJN as **Exhibit EE**.

62.     Meanwhile, Pravati caused the Circuit Court of Cook County, Illinois to issue to JP Morgan Chase Bank, NA ("Chase Bank") a *Citation to Discover Assets to Debtor's Bank* (the "Citation"). The Citation commanded Chase Bank to file an answer containing detail as to Debtor's activity, including his balance on deposit. The Citation was served upon Chase Bank on August 22, 2022, causing Chase Bank to freeze Randolph's accounts.  Dkt. No. 12, Schedule A/B, ¶ 17. True and correct copies of Chase Bank's answer to the Citation and the Agreed Order regarding the Citation are attached to the RFJN as **Exhibits FF** and **GG**.

## H.     Debtor's Bankruptcy Case

63.     On September 1, 2022 (the "Petition Date"), Debtor Randolph and Sylverne (collectively, "Debtor") filed a joint petition seeking chapter 13 relief. [Dkt. No. 1].  Debtor re-filed his Petition and Schedules on September 2, 2022. [Dkt. No. 12].[7] Debtor filed his Chapter 13 plan on September 2, 2022 [Dkt. No. 14] (the "Plan").  True and correct copies of the Petition and Schedules and Plan are attached to the RFJN as **Exhibits HH** and **II**.

64.     In his Schedule A/B, Vehicle 3.1 is a brand new 2022 Honda Accord Hybrid with fewer than 100 miles on it ("Honda"), and Vehicle 3.2 is a 2022 "Jeep Grand Cherokee L" with fewer than 10,000 total miles on it ("Jeep") (both collectively, the New Vehicles).

65.     Although not complete, Debtor's partially disclosed 2021 tax return shows he reported combined household wages of $81,404 for 2021 and flow-through income from Randolph & Holloway of $185,701.  2021 Tax Return, p.5, 7.  Also suspicious is that in 2021, Debtor

---

[7] Due to a filer error on the Petition Date, Debtor refiled correct versions of the Petition and Plan on September 2, 2022 [Dkt. Nos. 12 and 14].

received almost $20,000 in unemployment compensation. *Id.* at Sch. I, Line 7.    A true and correct copy of the 2021 Tax Return provided by Randolph's counsel is attached to the Declaration of Annie Y. Stoops as **Exhibit 1**.

66.    The Plan confirmation hearing was initially set for October 26, 2022.    However, the confirmation hearing has been continued multiple times and is currently set for May 17, 2023.

67.    At the first 341(a) meeting of creditors, Debtor had not timely provided his tax returns and other information as required.    At the continued October 31, 2022 341(a) meeting, he testified that Holloway is the only managing partner and thus retains authority over Debtor's compensation and is in control of the books and records of Randolph & Holloway.

68.    On November 28, 2022, Pravati filed an adversary complaint (the "Complaint") seeking a determination of non-dischargeability against Debtor under 11 U.S.C. §§ 523(a)(2) (for false pretenses, false representation, actual fraud) and (4) (for embezzlement and fraud by a fiduciary). [Adv. Dkt. No. 1].[8]    In the Complaint, Pravati alleges that Debtor Justin Randolph knowingly made false representations and material misstatements and omissions to induce Pravati to lend tens of thousands of dollars to the Sole Proprietorship.    These misrepresentations and omissions included that Randolph concealed the fact that he owed taxes and had corresponding liens against him, as well as failing to disclose all, and update the list, of the Sole Proprietorship's cases, and ultimately entering into the Funding Agreement never intending to repay Pravati in full.

69.    Following Debtor's failure to follow through upon promises to supply documentation to Pravati, Pravati moved on February 8, 2023 for production of documents under Fed. R. Bankr. P. 2004 [Dkt. No. 50] (the "2004 Motion"). On February 15, 2023, this Court granted Pravati's 2004 Requests in full. [Dkt. No. 51].    Between February 16, 2023 and February

---

[8] Adv. Case No. 22-00190.

18, 2023, Pravati served Debtor, Sylverne, and related parties with requests for production and

subpoenas.  As of the date of this Motion, Pravati has not received production from any of the

various alter egos.

70.     On February 23, 2023, Sylverne caused her bankruptcy case to be bifurcated from

this matter and converted to a case under Chapter 7 of the Bankruptcy Code, which case is now

pending as Case No. 23-bk-02282. Since the bifurcation approximately one month ago, Debtor has

not filed amended schedules, an amended statement of currently monthly income, or an amended

plan.

## IV.   ARGUMENT

### A.   Debtor's Bankruptcy Petition Continues Debtor's Bad Faith, Scorched-Earth Campaign Against Pravati.

71.     Pursuant to Section 1307(c) of the Bankruptcy Code, "the Court may convert a case

under this chapter to a case under chapter 7 of this title…for cause." 11 U.S.C. § 1307(c). Section

1307(c) provides a non-exhaustive list of circumstances which constitute cause. The Seventh

Circuit has held that lack of good faith in filing a chapter 13 petition constitutes sufficient "cause"

for conversion of a bankruptcy case under 11 U.S.C. § 1307(c).  *In re Love*, 957 F.2d 1350, 1354

(7th Cir. 1992).  The Seventh Circuit "has refused to adopt a specific test or definition of good

faith," opting instead to employ a fact-intensive inquiry which seeks to make the cause

determination on a case-by-case basis based upon the totality of the circumstances in each case.

*Id*. at 1354; *In re Smith*, 286 F.3d 461, 466 (7th Cir. 2002).

72.     "[O]ne of the primary purposes of the good faith evaluation . . . is to force the

bankruptcy court to examine whether or not under the circumstances of the case there has been an

abuse of the provisions, purpose, or spirit of [the Code]." *In re Love*. at 1357 (internal punctuation

- 25 -

and quotations omitted). "At base, this inquiry often comes down to a question of whether the filing is fundamentally fair." *Ibid*.; *accord In re Schaitz*, 913 F.2d 452, 453 (7th Cir. 1990) ("[T]he most fundamental and encompassing [factor when evaluating good faith] is whether the debtor has dealt fairly with his creditors.").

73.     Keeping in mind that the focus of the inquiry is fundamental fairness," the Seventh Circuit has identified the following as "some of the [nonexhaustive] factors [which] are relevant" to the inquiry: (1) the question of whether the debt would be nondischargeable in a chapter 7 proceeding; (2) the timing of the petition; (3) how the debt arose; (4) the debtor's motive in filing the petition; (5) how the debtor's actions affected creditors; (6) the debtor's treatment of creditors; and (7) whether the debtor has been forthcoming with the bankruptcy court and the creditors. *In re Love*, 957 F.2d at 1357. Each of these factors supports converting Debtor's case to Chapter 7.

**B.      The Debt to Pravati Would Not Be Dischargeable in Chapter 7.**

74.     "'Under a 'totality of the circumstances' test, a debt's nondischargeability under Chapter 7 arising from a debtor's prefiling conduct is relevant to the debtor's good faith.'" *In re Smith*, 286 F.3d at 467.

75.     The non-dischargeability of debts under Chapter 7 is governed by 11 U.S.C. § 523. As is relevant here, 11 U.S.C. § 523(a)(6) exempts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." However, Section 1328(a)—which applies to Chapter 13—allows a debtor to discharge debts under Section 523(a)(6) and, instead, exempts from discharge debts "for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor *that caused personal injury to an individual or the death of an individual*." 11 U.S.C. § 1328(a)(4) (emphasis supplied).

76.     As described in the Complaint, Debtor's debt to Pravati should be deemed

- 26 -

nondischargeable pursuant to Sections 523(a)(2) and (4) because of his extensive fraud related to obtaining funding from Pravati, and subsequently hiding assets and refusing to pay what he owes. As discussed, *infra*, Pravati holds a judgment upon a confirmed arbitration award against Debtor, which found that Debtor had committed the intentional tort of conversion against Pravati's collateral having a value of $119,500. However, the bigger issue for Debtor, however, is that Debtor has gone on to convert Pravati's lien over and over again. Given all of Debtor's success in his cases, Pravati is confident that real discovery will reveal that Debtor converted hundreds of thousands of more dollars in Proceeds subject to Pravati's lien.

77.    Moreover, the requirement of some personal injury in Chapter 13 makes a finding of nondischargeability under Section 523(a)(6) less likely than in Chapter 7. Pravati noted in the Complaint that if the case is converted, Pravati may amend the Complaint to add in claims under Section 523(a)(6).

78.    Due to Debtor's years of acting in bad faith, Debtor's debts to Pravati, which make up the majority of his debts, are nondischargeable under Section 523(a)(2) and (4) and would also not be dischargeable in Chapter 7 under Section 523(a)(6).

## C.    **The Timing of the Petition Demonstrates that Debtor Filed His Bankruptcy Case in Bad Faith.**

79.    Right before the bankruptcy, Pravati issued a Citation to Randolph & Holloway requiring the withholding of wages and production of documents. *See* Agreed Order on Citation At the same time, Pravati had levied upon Debtor's Chase Bank Account. *See* Chase Bank's Answer to the Citation. In addition, Pravati recorded its judgment liens. *See* the Recorded Judgments. Finally, right before the bankruptcy, Debtor lost on his free appeal bond motion and was ordered to post the full amount of the judgment. *See* Ruling on Bond Motion.

- 27 -

80.    Debtor's bankruptcy case should also be viewed in the context of Debtor's continuous efforts over several years to evade his obligations to Pravati.  Despite the requests from the Trustee and instructions and orders from the Court, Debtor has failed to make the required financial disclosures or respond to discovery requests, including the recent Rule 2004 requests. Consequently, the timing of the petition—right after Pravati recorded judgments against Debtor— illustrates that the Petition was merely a further effort by Debtor to avoid paying Pravati and other creditors.

**D.**    **The Debt to Pravati Arose from Randolph's Refusal to Repay Pravati.**

81.    Debtor's debt to Pravati arose as a result of (1), Justin Randolph's fraud in applying for a receiving funding from Pravati, and (2), his refusal to repay Pravati as required.  The District Court Judgment and State Court Judgments are awards for fees and costs incurred by Pravati in successfully defending the frivolous, bad faith claims of Debtor, which were initiated as an attempt to hinder and delay Pravati from receiving what Debtor owed.

82.    Debtor does not disclose in his Schedules that he improperly transferred the Sole Proprietorship's case portfolio to alter ego firm Randolph & Holloway, as found by the Arbitrator.

83.    From all of Debtor's successful case resolutions, Debtor has not remitted one penny to Pravati, even despite admitting on various occasions that Debtor did in fact owe money to Pravati.  Thus, Debtor's debt to Pravati stems directly from his refusal to pay Pravati.

**E.**    **Debtor's Motives in Filing This Bankruptcy Are Evident in Its Treatment of Creditors, Including Pravati, Before and After the Petition Was Filed.**

84.    "A debtor's pre-petition conduct is relevant under the totality of the circumstances test to assess the debtor's motives at the time of filing."  *Wright v. Bank of Louisville*, 993 F.2d 1550 (7th Cir. 1993).

- 28 -

85.    As discussed above, the conduct of Debtor in his dealings with Pravati demonstrates his repeatedly acting in bad faith and his extensive machinations to avoid repaying Pravati, and correspondingly, his fraudulent motives.

86.    Beginning with Randolph's fraudulent application for funding and continuing with his failure to revise Schedule B of the Agreement to update the case list or to actually pay Pravati anything Pravati was owed, Randolph has shown that his primary motivation in all actions with respect to Pravati has been to commit fraud for his own financial gain. *See* Second Amended Final Award, FOF ¶¶ 3, 6.

87.    Although Randolph obtained hundreds of thousands in proceeds from his cases, Randolph paid nothing to Pravati.  When Pravati issued notice of the occurrence of breach, Randolph created a new law firm to which to transfer his cases, as a further effort to frustrate Pravati's efforts to collect what was owed.

88.    In addition, Debtor's Bad Faith Actions, which resulted in judgments for Pravati, show that Debtor has operated in bad faith and has been willing to take extreme measures to try to avoid honoring his obligations to Pravati.

89.    Furthermore, in this case, Debtor refused, despite requests by the Trustee and directions from the Court, to make the required disclosures, thereby denying the Court and creditors full information regarding Debtor's finances.

90.    These delays have resulted in continuous and ongoing delays of the confirmation hearing, despite the fact that Debtor has still not even amended his original Plan.  Moreover, Debtor and his law firms have failed to respond to Pravati's properly issued Rule 2004 document requests and subpoenas.  Debtor has refused to pay Pravati—despite earning substantial amounts of Proceeds—prepetition, and postpetition, his lack of transparency and unreasonable delays in

AFDOCS:26727620.8

providing information and confirming a plan have demonstrated his motive of filing this case merely to cause further delays and avoid paying Pravati and other creditors.

**F.    Debtor's Actions Have Affected Creditors by Preventing Payment.**

91.    Clearly, Pravati has been negatively impacted by the actions of Justin Randolph, as Pravati has been forced to incur substantial legal fees, both in attempting to collect from Randolph, and to defend against the two frivolous lawsuits filed against Pravati.

92.    Moreover, as although this is a Chapter 13 case, in which the debtor typically must file a proposed plan within 14 days under Bankruptcy Rule 3015, and a plan is usually confirmed shortly thereafter, here, Debtor has been unable to confirm a plan, despite filing his Chapter 13 case over six months ago, due to his lack of transparency and deficiency-riddled Plan.  And, as noted earlier, Debtor has not even responded to Pravati's requests under the 2004 Motion, which has prevented Pravati from receiving the information to which it is entitled.

93.    This failure, in tandem with Debtor's failure to make the required disclosures, has (1) created great uncertainty for creditors, who lack the full knowledge of Debtor's financial circumstances, (2) made it impossible for creditors to determine the extent to which they can expect payment, and (3) has prevented creditors from being paid under a plan.

**G.    Debtor Has Not Been Forthcoming with the Court and Creditors.**

94.    Debtor has not scheduled the assets, liabilities, or cases of Randolph & Holloway, nor has Debtor provided information, including on his Statement of Financial Affairs ("SOFA") as to Randolph & Holloway's transactions precipitating Debtor's bankruptcy filing.[9]

---

[9] The same holds true for Debtor's other purported businesses, including but not limited to Law Office of Justin G. Randolph, Inc., which he incorporated in 2020 while the Arbitration was underway in order to somehow escape the conclusion that he was operating for years as a sole proprietorship. Debtor has also scheduled his 100% ownership interest in a business referred to as "Justin Randolph Law," but he provides no information or disclosures as to the nature of this

95.     As alleged in the Complaint, Debtor solicited funding from Pravati expecting that he would be able to avoid repayment by leaving Pravati holding a judgment against an empty corporation; Debtor apparently mistakenly believed that he could not face personal liability. Subsequently, Randolph has subjected Pravati to years of delay and substantial legal fees as a result of his efforts to evade paying his obligations to Pravati. Even once Pravati finally obtained its judgments, Debtor sought to forestall Pravati's collection efforts by frivolously appealing the judgments and seeking a stay pending appeal. While Debtor's legal arguments have been rejected in court and arbitration, his efforts—including this bankruptcy filing—have been wildly successful in delaying and avoiding paying Pravati.

96.     Debtor's Schedules indicate that he must have exhausted much of the *Lester* proceeds before he filed his Petition. Shortly before filing his Petition, Debtor acquired the New Vehicles as his sole and separate property. The Jeep costs over $60,000, yet Debtor apparently paid cash despite filing for bankruptcy soon thereafter. Debtor deliberately omits from his Schedules critical information such as when he acquired the vehicles, or "[d]ate debt was incurred" on Schedule D. [Dkt. No. 12, p.20]. The best explanation for the New Vehicles is that the Jeep was acquired by Randolph with the intent of converting nonexempt property into exempt property and defrauding his creditors and by using property subject to lien by Pravati (i.e., the *Lester* proceeds).

97.     Moreover, Debtor disclosed in his Schedules that he owns 50% of the successor firm, Randolph & Holloway, and 100% of "Justin Randolph Law" but values these ownership interests in both entities at $0.00. This is inaccurate to the extent Randolph & Holloway appears to have received hundreds of thousands of dollars in proceeds from cases which were subject to

---

business's operations, its assets, its liabilities, or even how Debtor arrived at the $0 valuation. [Dkt. No. 12, Schedule A/B, ¶ 19].

AFDOCS:26727620.8

Pravati's lien. These $0.00 valuations are also contradictory to his own prior representations to the
Arizona Superior Court.  In Debtor's Motion for Reconsideration, he argued that his interest in
Randolph & Holloway was valued at $189,639.  *See* Debtor's Motion for Reconsideration at p.3.
In that same Motion, Debtor also valued his interest in "Law Office of Justin G. Randolph" at
$2,934.07.  *Id.* at p. 9.  It is unclear whether "Justin Randolph Law" refers to the co-debtor, Law
Offices of Justin G. Randolph.  If so, then Debtor has contradicted himself as to valuations of both
businesses by first hiding the businesses from the Arizona Superior Court, then admitting they
have value, and later telling this Court in his Schedules that they have no value. Debtor's failure
to completely and honestly disclose financial affairs (especially Randolph's income from his legal
practice) in his bankruptcy case further demonstrates his bad faith.

98.    Under the Agreement, Debtor lacked authority to compromise Pravati's security
interest in those Proceeds.  *See* Funding Agreement, ¶ 5; Second Amended Final Award, FOF ¶
10).  However, the Second Amended Final Award contains findings, binding on Debtor, which
reflect that Randolph & Holloway is an alter ego of the Sole Proprietorship and that Randolph
"transferred his interest in client matters existing at the time of the formation of Randolph &
Holloway to that firm."

99.    Similarly, the public records reveal that Randolph transferred the same cases on the
original case list (as part of the Pravati Agreement) to Randolph & Holloway, who then appeared
in (without filing notices of substitution) and resolved those case but retained all monies for itself
and failed to honor Pravati's perfected security interest.  This is compounded by the fact that the
two lawyers behind Randolph & Holloway had worked together for years under the Sole
Proprietorship, and, due to their involvement in the Pravati funding, had actual knowledge of the
Agreement, including the provisions granting lien rights to Pravati.

- 32 -

100.    Despite the great amount of information showing Debtor's bad faith and malfeasance, nearly all of this information has been gathered through great difficulty by Pravati, which reflects the extent to which Debtor has failed to be forthcoming with the Court and creditors.

**H.    Randolph Is Not Eligible to be a Debtor in Chapter 13.**

101.    Pursuant to 11 U.S.C. § 109(e), Chapter 13 relief is only available to "an individual with regular income." The phrase "individual with regular income" is, in turn, defined in 11 U.S.C. § 101(a)(30) as an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title."  However, "The term 'income' is itself not defined [in the Bankruptcy Code], but courts addressing the issue agree that the test for 'regular income' is not the type or source of income" (internal quotation omitted).  *In re Durov*, No. 16-71699, 2017 WL 977026, at *5 (Bankr. C.D. Ill. Mar. 10, 2017).

102.    In the face of all this alter ego evidence, Debtor has maintained to the Arizona Superior Court, the Arizona Court of Appeals, and now this Bankruptcy Court, that he receives a fixed salary of $10,000 per month from Randolph & Holloway.  Despite Pravati's informal request and, later, Rule 2004 Motion, Debtor has not provided any paystubs in connection with this bankruptcy case, nor has Debtor produced any definitive agreement corroborating his salary from Randolph & Holloway.

103.    Debtor proposes to fund his Chapter 13 plan via this supposedly fixed salary. Despite Debtor's 341(a) testimony that Holloway is the only managing partner and thus retains authority over Debtor's compensation and is in control of the books and records of Randolph & Holloway, his assertion lacks credibility on its face given that (1) per Randolph & Holloway's website, that firm is expressly a continuation of the Sole Proprietorship, and (2) Randolph testified under oath at the 341(a) meeting that he is a 50% member of Randolph & Holloway.

- 33 -

104.    Even if it were true that Holloway exercises discretion over Randolph's salary, it would be grossly unfair to consider only this purported regular salary from Randolph & Holloway. Debtor is a 50% member of Randolph & Holloway, and as such, Debtor has control over and is able to manipulate his compensation.   For example, Randolph & Holloway could reimburse Randolph for personal expenses or directly pay Randolph's personal expenses.

105.    Randolph & Holloway could and seemingly did also make non-salary disbursements to Randolph, such as membership distributions. Indeed, this appears to be exactly how Randolph was being compensated before he contemplated a bankruptcy filing. Specifically, Debtor's Statement of Financial Affairs discloses that in calendar years 2020 and 2021, Debtor did not earn a salary at all but instead received $96,818 and $174,292.00, respectively, from "[o]perating a business."[10] [Dkt. No. 12, SOFA § 4].   Although Debtor's income could understandably be subject to some fluctuation, Debtor reported that his 2022 (the year in which Pravati finally obtained its judgments) year-to-date compensation did not include any income from operating a business and that he instead received wages of $52,169 through the Petition Date of September 1, 2022.  SOFA § 4.  However, at his purported salary of $10,000 per month, Debtor should have earned at least $80,000 by the end of August.  Debtor is a business owner who controls his own compensation; Debtor is not an individual with regular income.

106.    Although not complete, Debtor's partially disclosed 2021 joint U.S. Individual Income Tax Return belies the idea that Debtor earns from his own firm a stable, fixed salary of $10,000 per month.  He reported combined household wages of $81,404 for 2021 and flow-through income from Randolph & Holloway of $185,701.  Debtor's 2021 Tax Return, Line 1 and Sch. C,

---

[10] In light of Debtor's SOFA, it is unclear why Randolph & Holloway would issue a W-2 to Debtor reflecting payment of wages in 2020 of $50,000. A true and correct copy of the Debtor's W-2 from Randolph & Holloway, attached to the 2020 Tax Return provided by Randolph's counsel, is attached to the Declaration of Annie Y. Stoops as **Exhibit 2**.

AFDOCS:26727620.8

Part II. Also suspicious is that in 2021, Debtor received almost $20,000 in unemployment compensation, which contradicts the notion that Debtor earns a salary from Randolph & Holloway that is sufficient to fund a five-year plan. 2021 Debtor's Tax Return, Sch. 1, Line 7.

**I.      Debtor's Chapter 13 Bankruptcy Attempt Is Otherwise in Bad Faith.**

107.    Debtor's bankruptcy results from what is essentially a two-party dispute, which Debtor has caused to drag on for years, exactly as he said he would. Although Debtor has nominal unsecured debt, Debtor filed this Chapter 13 case to delay and impede Pravati's collection efforts. This comes after Debtor has forced Pravati to chase him for nearly half a decade. Not only does Debtor seek to cram down the amount he is required to pay Pravati in total, but a five-year Chapter 13 plan would effectively grant Debtor an interest-free loan for another five years. Creditors will fare better in Chapter 7, wherein there will be an objective assessment of Debtor's finances and assets and efficient administration of Debtor's estate for benefit of creditors.

108.    Accordingly, it would be fundamentally unfair for Debtor to benefit in Chapter 13 when he has so brazenly refused to honor his financial obligations to Pravati, as well as his duties under the law to provide information and move promptly to confirm a plan, both in this Court and in other jurisdictions.

**J.      There Is Cause to Convert Debtor's Case to Chapter 7 Based on the Unreasonable Delay Pursuant to Section 1307(c)(1).**

109.    Section 1307(c)(1) allows the Court to convert a case to chapter 7 for "unreasonable delay by the debtor that is prejudicial to creditors." 11 U.S.C. § 1307(c)(1). "One such well-recognized instance of prejudice is the debtor's protracted inability to demonstrate the feasibility of a plan." *In re Dempsey*, 247 F. App'x 21, 25 (7th Cir. 2007) (internal citations omitted).

110.    Other examples of unreasonable delays include failing both to follow the Court's

- 35 -

instructions and to make payments to the trustee while a disputed claim was being resolved and

failing to resolve problems with the filed plan.  *See, e.g.*, *In re De la Salle*, 461 B.R. 593, 606 (9th

Cir. BAP 2011); *In re Blaise*, 219 B.R. 946, 950 (2d Cir. BAP 1998).

111.    Here, to contextualize Debtor's case, Debtor has already delayed repaying Pravati

since at least 2019, when Pravati gave written notice to Randolph of the occurrences of breach.

Over three and a half years have passed since that time, during which Pravati has had to

(successfully) defend itself at great expense in the Bad Faith Actions, as well as having to pursue

claims in this bankruptcy case, even though Debtor has concealed assets (including by transferring

cases from the Sole Proprietorship to Randolph & Holloway).

112.    Moreover, although this is a Chapter 13 case, in which a debtor typically must file

a proposed plan within 14 days under Bankruptcy Rule 3015, and a plan is usually confirmed

shortly thereafter, here, Debtor have been unable to confirm a plan, despite filing this Chapter 13

case over six months ago.  This failure is due to Debtor's lack of transparency and deficiency-

riddled Plan and has led to the confirmation hearing be continued multiple times.  Indeed, after

Sylverne converted her case from Chapter 13 to Chapter 7, Local Rule 1019-1 required Debtor to

file amended schedules and an amended statement of financial affairs "within 14 days of division

of the case."  Sylverne's case was converted on February 21, 2023. Nonetheless, as of the date of

this Motion, Randolph has still not filed amended schedules or an amended statement of financial

affairs.

113.    Debtor failed to timely provide all required documentation to the Chapter 13 trustee

(the "Trustee"), including proof of income from the Sole Proprietorship and records of Randolph's

income/compensation from Randolph & Holloway.  To date, Randolph still has not complied with

this requirement.  The Debtor's failure to provide the information required by law forced Pravati

- 36 -

to file the 2004 Motion to seek basic financial information related to Debtor's income, assets, and liabilities, including those related to his various law firms.

114.    Furthermore, as noted by Pravati in the Plan Objection, there are numerous problems with the Plan, including that Pravati did not accept the Plan, the Plan failed to provide for payment on the Conversion Judgment, and the lack of feasibility.  To date, Debtor has not addressed any of these concerns.

115.    Debtor has failed to demonstrate that his Plan is feasible by making full and accurate disclosures of his finances.  Furthermore, Debtor has failed to do so even when facing requests from the Trustee and direction from this Court that he make the required disclosures.

116.    This lack of transparency and unwillingness to comply with the basic requirements of proceeding in Chapter 13 have led to unreasonable and unnecessary delays.  As a result of Debtor's actions, the earliest a plan may be confirmed is eight months after the Petition Date, after the confirmation hearing has already been several times.  Yet even confirmation on May 17, 2023 is unlikely for the reasons raised by Pravati—none of which have been remedied—in the Plan Objection, which promises further delays.

117.    Most recently, Pravati filed the 2004 Motion.  Nearly a month after Pravati served the requests for production and subpoenas, Debtor, Sylverne, Holloway, and the law firms have not yet responded.  Debtor's delays are unreasonable, but utterly predictable when viewed in the context of Debtor's multiyear efforts to evade paying his obligations.  Therefore, the case should be converted to Chapter 7 due to Debtor's unreasonable delays.

**K.**     <u>**As Requested Herein, Conversion to Chapter 7 Is in the Best Interests of Creditors and the Estate.**</u>

118.    Once it has been established that conversion or dismissal is warranted, the Court

- 37 -

should then look to which option is in the best interest of creditors and the estate. See 11 U.S.C. § 1307(c). "[T]he consideration whether to dismiss or convert under section 1307(c) requires the court further to determine whether the best interests of the estate and its creditors dictate conversion or dismissal." *In re Blaise*, 219 B.R. at 950.

119.    Here, conversion to Chapter 7, rather than dismissal, is in the best interests of the estate and creditors. Although Debtor may have filed his case in bad faith, creditors will be better served by conversion to Chapter 7, where the liquidation of Debtor's assets can be overseen by a trustee and the Court, rather than dismissal, where Debtor can continue to evade creditors.

120.    Moreover, as Pravati has discussed in its pleadings in this case, Debtor likely has additional undisclosed assets related to Randolph's legal practice, which may be recovered by a Chapter 7 trustee and administered for the benefit of creditors. In contrast, dismissal will (1) again leave creditors to the mercy of Debtor, who have already gone to great lengths to conceal assets and avoid paying creditors, and (2) ultimately require creditors, like Pravati, to pursue their remedies against Debtor in yet another court.

121.    Further, purportedly because Debtor is in Chapter 13, the trustee has not pursued recovery of any fraudulent transfers between insiders such as Debtor, Sylverne, Philip Holloway, or any one of their various alter ego entities. Pravati is not able to bring or obtain these claims pursuant to 11 U.S.C. § 548. These claims, however, are very strong and allow for a two-year statute of limitations in bankruptcy. It is in the best interests of creditors for these claims to be brought. A Chapter 7 trustee could pursue fraudulent transfers and back door preferences. Conversion will make this case far more economical to prosecute for a trustee and for creditors.

122.    Therefore, conversion, not dismissal, best serves the interests of creditors, and Pravati respectfully requests the Court convert this case to one under Chapter 7.

AFDOCS:26727620.8

## V.    MANNER AND FORM OF NOTICE

123.    Pravati has given notice of this Motion to all known creditors and parties-in-interest in this bankruptcy case.  Pravati believes that such notice constitutes adequate notice and requests that such notice be approved by this Court as being adequate under all of the circumstances.

## VI.    CONCLUSION

124.    Based on the foregoing, Pravati respectfully requests that the Court grant this Motion and convert Debtor's case to Chapter 7, as conversion is in the best interests of creditors.

**WHEREFORE,** Pravati respectfully requests that the Court enter an Order:

(1)    Granting this Motion;

(2)    Converting this case to Chapter 7 as requested herein; and

(3)    Granting such other and further relief as this Court deems just and proper.

Dated:  March 31, 2023

Respectfully submitted,

**ARENTFOX SCHIFF LLP**

By: */s/ Annie Y. Stoops*

Aram Ordubegian (*pro hac vice admitted*)
Annie Y. Stoops (*pro hac vice admitted*)
ArentFox Schiff LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
Telephone: (213) 629-7400
Facsimile: (213) 629-7401
Email: aram.ordubegian@afslaw.com
annie.stoops@afslaw.com

J. Mark Fisher (ARDC No. 3121711)
ArentFox Schiff LLP
233 South Wacker Drive, Suite 7100
Chicago, IL 60606 USA
Telephone: (312) 258-5500
Facsimile: (312) 258-5600
Email: mark.fisher@afslaw.com

Attorneys for Plaintiff Pravati SPV II, LLC

- 39 -